[Cite as *State v. Croghan*, 2019-Ohio-3970.]

STATE OF OHIO      )                 IN THE COURT OF APPEALS
                          )ss:          NINTH JUDICIAL DISTRICT

COUNTY OF SUMMIT     )

STATE OF OHIO                        C.A. No.      29290

     Appellee

     v.                               APPEAL FROM JUDGMENT
                                    ENTERED IN THE
ERIN CROGHAN                    BARBERTON MUNICIPAL COURT
                                    COUNTY OF SUMMIT, OHIO
     Appellant                 CASE No.     18CRB000541

DECISION AND JOURNAL ENTRY

Dated: September 30, 2019

HENSAL, Judge.

**{¶1}** Erin Croghan appeals her conviction for inducing panic from the Barberton Municipal Court. This Court affirms.

I.

**{¶2}** According to Ms. Croghan's Facebook posts and the testimony of officials from Coventry Local Schools, while standing with her daughter at the bus stop in November 2017, Ms. Croghan overheard a Coventry elementary school student say that a boy had a gun at the Coventry middle school the previous day. Ms. Croghan called the middle school and spoke to the superintendent. The superintendent contacted the boy's parents, who indicated that the boy never had a gun at the middle school. Rather, the boy had a broken pellet gun in their front yard while waiting for his sibling to get off the bus. The superintendent relayed this information to Ms. Croghan, and assured her that there was never a gun at the middle school.

**{¶3}** On February 20, 2018, after the Parkland school shooting in Florida, the superintendent sent a "robocall" (i.e., a recorded message) out to all of the school parents, assuring them that there were no present threats at any of the schools within the district, and that the schools had safety plans in place. The robocall further indicated that, if anything serious occurred at one of the schools, parents would be notified. Later that evening, Ms. Croghan posted a message to the "Portage Lakes Rocks" Facebook group, which is a private group that had approximately 7,000-8,000 members at the time. Ms. Croghan's post read:

> Just a quick question[.] I just received a call from the Super, as I'm sure most of you did, but did anyone from the middle school become aware that a student brought a gun to school a few months ago? I[t] ended up being a pellet gun but it could've still caused harm. Just curious if anyone/parents were made aware of this past incident? Thanks[.]

**{¶4}** Ms. Croghan's post generated numerous responses from the Facebook group members, one of whom alerted the middle school principal. The principal replied to Ms. Croghan's post, stating that "[t]here have been ZERO incidents of any type of gun in [the middle school,]" and criticizing her post as being "exactly why social media is dangerous." Ms. Croghan then continued to post, maintaining that the superintendent had confirmed that there had been a pellet gun in the boy's locker at school, that she "kn[e]w the truth[,]" that the principal was lying, and that the "schools [were] trying to cover this up." This generated further responses from the Facebook group members, some of whom indicated that they were worried and thought the school was attempting to hide information from them. Others criticized Ms. Croghan for turning to social media to "cause panic and make more people worried and concerned" instead of going to the school and handling the situation in person. Ms. Croghan continued to insist that the school was trying to keep things "hush-hush[,]" possibly because a levy related to the school's funding was on the ballot at the time of the alleged gun incident in November 2017.

**{¶5}** The principal took screenshots of Ms. Croghan's posts and contacted the police. The police then went to Ms. Croghan's home, told her she was "causing panic[,]" and asked her to take down her original Facebook post, which she did. Ms. Croghan, however, continued to post on Facebook about the alleged gun incident. The police then issued a summons for Ms. Croghan to appear in court, where she was charged with inducing panic in violation of Revised Code Sections 2917.31(A)(1) and 2917.31(A)(3). Ms. Croghan pleaded not guilty, and the State later amended the charges to remove reference to Section 2917.31(A)(3). The case proceeded to a jury trial, and the jury found Ms. Croghan guilty. She now appeals, raising five assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF SCREENSHOTS OF FACEBOOK POSTS FROM APPELLANT.

**{¶6}** In her first assignment of error, Ms. Croghan argues that the trial court erred by admitting the screenshots that the principal took of her alleged Facebook posts into evidence because, according to Ms. Croghan, they were not properly authenticated. This Court disagrees.

**{¶7}** "We review a trial court's determination of authentication for an abuse of discretion." *State v. Moorer*, 9th Dist. Summit No. 27685, 2016-Ohio-7679, ¶ 6, citing *State v. Spy*, 9th Dist. Summit No. 27450, 2016-Ohio-2821, ¶ 14. "An abuse of discretion occurs if the trial court acted in a manner that was arbitrary, unreasonable, or unconscionable." *State v. Huguley*, 9th Dist. Summit No. 28322, 2017-Ohio-8300, ¶ 15, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶8}** Evidence Rule 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to

support a finding that the matter in question is what its proponent claims." Such evidence can include "[t]estimony that a matter is what it is claimed to be." Evid.R. 901(B)(1). Notably, "[t]he threshold for demonstrating authentication is low[.]" *Moorer* at ¶ 6, citing *State v. Hoffmeyer*, 9th Dist. Summit No. 27065, 2014-Ohio-3578, ¶ 18. "All that is required is sufficient evidence from which the trier of fact might conclude that a document is authentic." *State v. Howard*, 1st Dist. Hamilton No. C-170453, 2018-Ohio-3692, ¶ 15.

{¶9} Ms. Croghan argues that the State failed to properly authenticate the screenshots of her alleged Facebook posts because it did not subpoena information from Facebook and/or from her internet service provider in order to link the Facebook posts to her. She also argues that the screenshots were not self-authenticating, and that the only person to authenticate the screenshots was the principal, who is not a Facebook employee or an IT professional. She further argues that the principal never testified as to when she took the screenshots.

{¶10} As Ms. Croghan notes, the principal testified that the exhibits presented at trial accurately depicted the screenshots she took of Ms. Croghan's Facebook posts. The record indicates that the principal provided some of the screenshots to the police on February 21, 2018, the day after Ms. Croghan's original Facebook post. The detective who spoke to Ms. Croghan at her home testified that Ms. Croghan admitted that the posts were hers. In light of the testimony presented at trial, we conclude that the State presented sufficient evidence from which the jury could have concluded that the screenshots were authentic. *See Howard* at ¶ 15-18. The trial court, therefore, did not abuse its discretion by admitting the screenshots into evidence. Accordingly, Ms. Croghan's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF SCREENSHOTS OF GOFUNDME POSTS FROM APPELLANT.

{¶11}  In her second assignment of error, Ms. Croghan argues that the trial court erred by admitting screenshots of a post she allegedly made to the website www.gofundme.com.  She argues that the screenshots were irrelevant, and that, even if they were relevant, their evidentiary value was substantially outweighed by the danger of unfair prejudice.  She further argues that the screenshots were not properly authenticated.

{¶12}  "A trial court has broad discretion in determining whether to admit or exclude evidence.  Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66 (1991).  Relevant evidence is generally admissible, while irrelevant evidence is inadmissible.  Evid.R. 402.  Evidence Rule 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *."  Evid.R. 403(A).

{¶13}  Ms. Croghan's post to www.gofundme.com indicates that she was trying to solicit financial support from the community to help her pay her legal fees in connection with her criminal case.  Her post detailed the events that had transpired that led to her being charged with inducing panic, including the initial incident in November 2017, her Facebook posts in February 2018, and her belief that the school lied about there never being a gun at the middle school.  The principal testified that she took the screenshots of Ms. Croghan's post, which contained a picture of Ms. Croghan and her daughter.

{¶14}  Given the content of Ms. Croghan's post, including her recitation of the facts giving rise to the charge of inducing panic, we cannot say that the trial court abused its discretion by determining that this was relevant evidence.  Nor can we say that the principal's testimony

related to the screenshots was insufficient for purposes of authenticating those exhibits. *See Howard*, 2018-Ohio-3692, at ¶ 15-18. Ms. Croghan argues that the admission of these exhibits essentially forced her to testify, which she did not do. The Rules of Evidence, however, do not summarily preclude prior written statements of a party simply because that party has chosen not to testify. *See, e.g.*, Evid.R. 801(D)(2) (providing that written or oral admissions of a party-opponent are not hearsay). In light of the foregoing, Ms. Croghan's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT'S DECISION TO ALLOW TESTIMONY FROM JOEL GREEN THAT APPELLANT WAS BLOCKED FROM THE "COVENTRY FOR KIDS" FACEBOOK PAGE ON REDIRECT WAS AN ABUSE OF DISCRETION, AS IT WAS BEYOND THE SCOPE OF CROSS-EXAMINATION.

{¶15} In her third assignment of error, Ms. Croghan argues that the trial court erred by allowing the State's witness to testify on re-direct examination that Ms. Croghan had been blocked from the "Coventry for Kids" Facebook group. For the reasons that follow, we disagree.

{¶16} As the Ohio Supreme Court has stated, "[t]he control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof." *State v. Wilson*, 30 Ohio St.2d 199, 204 (1972). As previously noted, "[a]n abuse of discretion occurs if the trial court acted in a manner that was arbitrary, unreasonable, or unconscionable." *Huguley*, 2017-Ohio-8300, at ¶ 15, citing *Blakemore*, 5 Ohio St.3d at 219.

{¶17} On direct examination, the moderator for the Portage Lakes Rocks Facebook group indicated that he did not block Ms. Croghan's posts from the Portage Lakes Rocks Facebook group. On cross examination, Ms. Croghan's counsel asked the moderator if Ms.

Croghan was removed as a member of that group, and the moderator indicated she was not. Then, on re-direct, the prosecutor asked the moderator whether he recalled telling him prior to trial that he blocked Ms. Croghan from the Facebook group. Ms. Croghan's counsel objected, and the trial court overruled the objection. The moderator then responded that he previously told the prosecutor that he blocked Ms. Croghan from the Coventry for Kids Facebook group, which is a group he created. Ms. Croghan's counsel objected again, arguing that the State's questioning was outside the scope of his cross examination. The trial court overruled the objection. The trial court then allowed Ms. Croghan's counsel to re-cross examine the moderator. During Ms. Croghan's counsel's re-cross examination, he questioned the moderator as to the reason Ms. Croghan was blocked from the Coventry for Kids Facebook group, ultimately eliciting testimony that Ms. Croghan was not a good fit for that group.

{¶18} On appeal, Ms. Croghan argues that the trial court abused its discretion by allowing the State to question the moderator as to the Coventry for Kids Facebook group because it was outside the scope of her trial counsel's cross examination. She also argues that the State's questioning amounted to an impeachment of its own witness through a prior inconsistent statement, and that the trial court abused its discretion by allowing the questioning because there was no "surprise and affirmative damage" as required under Evidence Rule 607(A).

{¶19} The Ohio Supreme Court has acknowledged that the State may inquire into new areas during re-direct examination. *State v. Faulkner*, 56 Ohio St.2d 42, 46 (1978). When the State does, the trial court must allow defense counsel the opportunity to re-cross examine the witness. *Id.* Even assuming that the State's questioning as to a different Facebook group constituted a new area during re-direct, Ms. Croghan's counsel had the opportunity to (and did) re-cross examine the State's witness. Further, regarding Ms. Croghan's argument under

Evidence Rule 607, even if the State improperly impeached its own witness, she has not demonstrated that she suffered prejudice. *State v. Brown*, 3d Dist. Marion No. 9-94-13, 1994 WL 521186, *4 (Sept. 23, 1994) (holding that, even if an improper impeachment under Evidence Rule 607 occurred, it did not prejudice the defendant's case). She argues that the improperly elicited testimony supported the conclusion that there was a reason to block her from the Facebook group, that she did – in fact – cause an uproar, and therefore, that she was guilty of the offense of inducing panic. Given the other testimony contained in the record, we cannot say that the State's witness's testimony – even if improperly admitted – prejudiced her defense. Ms. Croghan's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

> APPELLANT'S CONVICTION FOR INDUCING PANIC WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3 OF THE OHIO CONSTITUTION.

**{¶20}** In her fourth assignment of error, Ms. Croghan argues that her conviction for inducing panic was not supported by sufficient evidence. This Court disagrees.

**{¶21}** A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "[T]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct de novo review, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

**{¶22}** As previously noted, Ms. Croghan was convicted of inducing panic in violation of Section 2917.31(A)(1). Section 2917.31(A)(1) provides that "[n]o person shall * * * cause serious public inconvenience or alarm, by * * * initiating or circulating a report or warning of an alleged or impending * * * crime * * * knowing that such report or warning is false[.]" Neither the statute nor its legislative notes define serious public inconvenience or alarm. Case law, however, indicates that "mere public awareness of an event is not sufficient to satisfy the element of serious public inconvenience or alarm; there must be some type of disruption, discomfort, distress, or fear * * *." *In re J.C.*, 11th Dist. Lake No. 2012-L-083, 2013-Ohio-1292, ¶ 20.

**{¶23}** Here, the State presented evidence indicating that Ms. Croghan spoke to the superintendent in November 2017 about the allegation that a boy had brought a gun to the middle school. After investigating the matter, the superintendent assured Ms. Croghan that there was never a gun at the middle school. Despite this assurance, Ms. Croghan posted an inquiry on Facebook in February 2018, asking whether anyone was aware that a boy had brought a pellet gun to school "a few months ago[.]" The middle school principal responded, indicating that "[t]here have been ZERO incidents of any type of gun in [the middle school.]" Notwithstanding, Ms. Croghan continued to post on Facebook, accusing school officials of lying, and promising that she knew the truth. This generated concerned responses from parents.

**{¶24}** According to the principal, her office typically receives between zero and five calls per day. After Ms. Croghan's Facebook posts, she received at least 15 calls from parents who were "afraid" and "very concerned about the safety of their children in the school when [Ms. Croghan] indicated on multiple occasions that there was a gun in a locker at the middle school and that the school district hid that information from parents." The principal testified that this ordeal consumed her entire day, that her phone was ringing "off the hook[,]" and that she

also spent time responding to emails from concerned parents. Additionally, the executive assistant to the superintendent testified that she received calls from concerned parents for about a week, averaging around 25 calls per day. The superintendent also testified, indicating that a few parents came to the school to ask what was going on and why the school was hiding information from them. She also testified that she received calls from officials from other school districts who were concerned because they had heard that there had been a gun at the middle school. A secretary from the middle school also testified, indicating that she answered calls from "concerned and worried" parents, some of whom asked whether they needed to pick their children up from school. In addition to the school officials, the detective who investigated the matter indicated that the school was "being overloaded[,]" and that the replies to Ms. Croghan's Facebook posts indicated that "there was panic about the kids in school." Further, the moderator for the Portage Lakes Rocks Facebook group indicated that Ms. Croghan's posts caused "a little bit of panic."

{¶25} Viewing the evidence in a light most favorable to the State, we conclude that the State presented sufficient evidence from which a reasonable jury could conclude that Ms. Croghan "cause[d] serious public inconvenience or alarm, by * * * [i]nitiating or circulating a report or warning of an alleged or impending * * * crime * * * knowing that such report or warning [wa]s false[.]" R.C. 2917.31(A)(1). To the extent that Ms. Croghan argues that Section 2917.31(A)(1) does not apply to reporting past events, we reject her argument. Ms. Croghan's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

APPELLANT'S CONVICTION FOR INDUCING PANIC WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3 OF THE OHIO CONSTITUTION.

{¶26} In her fifth assignment of error, Ms. Croghan challenges the weight of the evidence presented at trial. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶27} Ms. Croghan makes several arguments in support of her position that her conviction was against the manifest weight of the evidence. She argues that her posts did not cause a serious inconvenience to school officials, whose job duties include fielding calls from parents, or to the school, which was not evacuated or locked down. She argues that the number of calls from concerned parents was never specified, and that the school officials only gave estimates as to how many calls they received. Relatedly, she argues that the estimates given indicated that there were reactions from a limited number of parents, which weighed against a finding that she caused serious public inconvenience or alarm. She also argues that the evidence weighed against a finding that she knew her Facebook posts contained false information. Lastly, she argues that the evidence weighed against a conviction because her original Facebook post referenced a past event (i.e., a gun allegedly being brought to school in November 2017).

{¶28} Ms. Croghan's arguments lack merit. The record indicates that the superintendent assured Ms. Croghan in November 2017 that a gun had never been brought to the middle school. The record also indicates that the principal responded to Ms. Croghan's initial Facebook post,

stating that "[t]here have been ZERO incidents of any type of gun in [the middle school]." Notwithstanding, Ms. Croghan continued to post on Facebook, insisting that there had been a gun at the school, that the superintendent had confirmed this with her, and that the school was now trying to cover it up. This generated responses from tens of parents who contacted the school inquiring about the alleged gun incident and/or questioning the school as to why it was hiding information from them. In light of the evidence presented at trial, we cannot say that this is the exceptional case in which we must reverse the conviction as against the manifest weight of the evidence. Accordingly, Ms. Croghan's fifth assignment of error is overruled.

III.

{¶29} Ms. Croghan's assignments of error are overruled. The judgment of the Barberton Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

BRIAN A. SMITH, Attorney at Law, for Appellant.

MICHELLE BANBURY, Assistant Prosecuting Attorney, for Appellee.