[Cite as *State v. Kimbrough*, 2021-Ohio-2225.]

STATE OF OHIO        )           IN THE COURT OF APPEALS
)ss:       NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

STATE OF OHIO                   C.A. No.     19CA011574

    Appellee

    v.                           APPEAL FROM JUDGMENT
ENTERED IN THE
EDDIE KIMBROUGH            COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
    Appellant                CASE No.    19CR100402

DECISION AND JOURNAL ENTRY

Dated: June 30, 2021

SUTTON, Judge.

{¶1} Defendant-Appellant, Eddie Kimbrough, appeals his conviction of one count of rape from the Lorain County Court of Common Pleas. For the following reasons, we affirm the judgment of the trial court.

I.

**Events of August 3, 2018**

{¶2} In the early morning hours, T.S. was awakened by a knock on her bedroom window, followed by a knock at her front door. She went to her front door, looked out the peephole, and saw her friend, Mr. Kimbrough. She let Mr. Kimbrough inside of her apartment. Mr. Kimbrough appeared to be agitated and angry. T.S. told Mr. Kimbrough that he needed to leave because she had to work in the morning. When he did not leave, T.S. went into her bedroom to get a cigarette. Mr. Kimbrough followed T.S. into her bedroom. While in the bedroom, a physical altercation occurred between T.S. and Mr. Kimbrough leaving T.S. with a bruised, swollen, and bloodied

face, marks on her neck, and bruises on her chest. According to T.S., after this physical altercation, Mr. Kimbrough then told her if she did not have sexual intercourse with him, he would kill her. Unable to fend him off, and in fear for her life, T.S. complied.

{¶3} After the sexual intercourse, T.S. sat in a chair in her bedroom while Mr. Kimbrough laid in the bed. Once Mr. Kimbrough fell asleep, T.S. texted two friends that she had been raped and asked them to call 911. When she received no response to her text messages, T.S. went into the living room and called 911 to report she had been raped and that her assailant was still in her apartment. The police responded within minutes and arrested Mr. Kimbrough.

{¶4} T.S. was transferred to the hospital, where a rape kit was completed. The police officers also took photos of her injuries which revealed significant bruising on her upper torso. Police later matched a DNA sample from Mr. Kimbrough to the sample taken from T.S.'s rape kit.

**The Trial**

{¶5} A grand jury indicted Mr. Kimbrough on one count of rape and one count of kidnapping. The matter proceeded to trial. On the second day of trial, during a recess in the proceedings that occurred after the close of the prosecution's case, defense counsel was approached by a man, J.P., in the hallway. J.P. asked defense counsel why no one was bringing up certain information about the victim. J.P. then proceeded to show what defense counsel claimed were sexually explicit text messages and pictures allegedly from the victim. The messages allegedly included offers of sex for money made by the victim. Defense counsel approached the judge in chambers with the prosecutor to discuss the alleged information that J.P. was offering. The record indicates the trial court extended the recess by an additional ten minutes to provide defense counsel with additional time to get copies of the alleged messages and images from J.P.'s phone.

{¶6}    After the recess, the parties reconvened in the courtroom and went back on the record.  Defense counsel stated he was unable to provide the judge or the prosecutor with copies of the alleged messages or pictures because J.P. was still trying to figure out how to get them off his phone.  Defense counsel argued for the admission of the evidence on the basis that the evidence related to the victim's credibility, because the victim previously testified she was having issues with intimacy as a result of the rape by Mr. Kimbrough.  The State argued against the admission of anything from J.P.'s phone, or allowing J.P. to be called as a witness, on the grounds that the State did not have the opportunity to authenticate the messages.  The State indicated it would need to perform a full extraction of J.P.'s phone to verify the authenticity of any messages or pictures.  The trial court ruled against allowing defense counsel to call J.P. as a witness or allowing the pictures and messages into evidence.  Defense counsel then asked for another recess to explore the possibility of finding legal authority for the court.  The trial court denied defense counsel's request for another recess.

{¶7}    The defense proceeded with its case.  Defense counsel called one witness, Mr. Kimbrough, who testified in his own defense.  Mr. Kimbrough admitted to getting into a physical altercation with the victim that evening but denied raping her.  He stated that after he fought with T.S., they reconciled and had consensual sex.  A jury returned a verdict of not guilty on one count of kidnapping and guilty on one count of rape. Mr. Kimbrough was sentenced to eight years imprisonment.

{¶8}    Mr. Kimbrough now appeals from the trial court's judgment and raises three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

**THE COURT ERRED WHEN IT FAILED TO DECLARE A MISTRIAL, CONTINUE THE TRIAL, OR PERMIT DEFENSE COUNSEL TO QUESTION ON THE NEWLY DISCOVERED EVIDENCE AFTER A WITNESS CAME FORWARD WITH SURPRISE TESTIMONY MID-TRIAL.**

{¶9} In his first assignment of error, Mr. Kimbrough argues the trial court erred in handling the surprise witness that came forward with alleged new evidence after the close of the State's case. For the following reasons, we disagree.

{¶10} To make his argument, Mr. Kimbrough relies on Crim.R. 16, which governs discovery in a criminal case. The rule aims "'to prevent surprise and the secreting of evidence favorable to one party.'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 19, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987). Mr. Kimbrough argues that the trial court should have treated the surprise witness and the alleged new evidence as a discovery violation under Crim.R. 16(L)(1).[1] While Mr. Kimbrough cites to the rule relating to discovery violations, he does not develop an argument that the State committed a discovery violation. Mr. Kimbrough does not allege, nor does the record reflect, the State withheld the identity of J.P. or the information on J.P.'s phone.

{¶11} Mr. Kimbrough's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.**

---

[1] Mr. Kimbrough cited and argued under Crim.R.16(E)(3), which is identical to Crim.R. 16(L)(1). *See Darmond* at ¶ 33.

{¶12}   In his second assignment of error, Mr. Kimbrough argues his conviction was not supported by sufficient evidence because the State failed to prove Mr. Kimbrough used force or a threat of force when he had sexual intercourse with T.S.   Mr. Kimbrough concedes he had a physical altercation with the victim, but contends he then had consensual sex with her. For the reasons stated below, we are not persuaded by his argument.

## Sufficiency of the Evidence

{¶13}   Whether a conviction is supported by sufficient evidence is a question of law, which this court reviews de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  "A challenge to the sufficiency of the evidence concerns the State's burden of production * * *" and is, "[i]n essence, * * * a test of adequacy."  *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386.  In carrying out this review, the court's function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, ¶ 24, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id*.

{¶14}   R.C. 2907.02 (A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."   Moreover, "[f]orce need not be overt and physically brutal but can be subtle and psychological.  As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." (Internal citation omitted.)  *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1988).

{¶15} Here, T.S.'s testimony, if believed, is sufficient to permit the jury to reasonably infer that Mr. Kimbrough raped her. T.S. testified that Mr. Kimbrough used both physical and psychological force in raping her. Describing the rape, T.S. testified Mr. Kimbrough slapped and punched her in the face. T.S. further testified Mr. Kimbrough threw her on the bed and, as she fought back, she rolled off the bed onto the floor. While on the floor, T.S. testified Mr. Kimbrough pulled her up by her hair and threw her back on the bed. The State also provided pictures of T.S. taken at the hospital showing the extent of her physical injuries, including significant swelling and bruising to her face.

{¶16} In addition to evidence of physical force, T. S. also presented evidence that Mr. Kimbrough used psychological force to rape her. T.S. testified Mr. Kimbrough threatened that if she did not have sex with him, he would kill her. This constitutes force by fear or duress, which can establish the element of force. *See Eskridge*, 38 Ohio St.3d at 58-59. T.S. also testified that when Mr. Kimbrough was unable to penetrate her, he repeated the threat, stating he would kill her if he was not able to penetrate her. T.S. testified, at that point, she got a lubricant because she was afraid for her life.

{¶17} Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could find all of the essential elements of rape, including the element of force, beyond a reasonable doubt. T.S.'s testimony is legally sufficient to establish the element of force necessary to sustain a conviction for rape. As such, Mr. Kimbrough's conviction is supported by legally sufficient evidence. Mr. Kimbrough's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

**THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.**

{¶18} In his third assignment of error, Mr. Kimbrough argues that his conviction was against the manifest weight of the evidence. For the following reasons, we disagree.

{¶19} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387. "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

{¶20} Here, there is no evidence the trier of fact "clearly lost its way" or that a "manifest miscarriage of justice" has occurred. At trial, the defense conceded Mr. Kimbrough had a physical altercation with T.S. and also that Mr. Kimbrough had sexual intercourse with T.S. The only question was whether the sexual intercourse was consensual.

{¶21} Mr. Kimbrough testified the sexual intercourse was consensual. He further testified that after the physical altercation, he got ice for T.S. to put on her face and then went to sleep in T.S.'s bed. According to Mr. Kimbrough, T.S. then got in bed with him and they had consensual sex. In his brief, Mr. Kimbrough argues his testimony should be given greater weight than that of the victim's testimony because, when asked, he was truthful about his illegal drug use. Mr. Kimbrough admitted to consuming alcohol on the night in question and admitted to having a crack

cocaine addiction. However, Mr. Kimbrough's argument fails to recognize that the very things he believes should have given his testimony greater credibility could have caused the jury to give his testimony less credibility.

{¶22} T.S. testified that after Mr. Kimbrough beat her, he threatened to kill her if she did not have sex with him. After having sexual intercourse, T.S. remained seated in a chair in the bedroom. When T.S. believed Mr. Kimbrough was asleep, she got her phone from Mr. Kimbrough and texted two of her friends that she was raped and asked them to call 911. The prosecution presented the jury with copies of the time-stamped text messages T.S. had sent to her friends. Pictures taken of T.S. at the hospital showed her swollen, bruised, and cut face. Sergeant Tabitha Angelo, a detective with the Lorain Police Department, testified that T.S. was "obviously [] in crisis" at the hospital and that T.S.'s injuries were consistent with her account of what happened that evening. The sexual assault nurse examiner captured T.S.'s account of the events in her report made at the hospital after the attack. The testimony that T.S. gave at trial remained consistent with the sexual assault nurse examiner's report.

{¶23} Upon our review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we determine that the jury, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring reversal of Mr. Kimbrough's conviction and a new trial. This is also not the exceptional case in which the evidence weighs heavily against conviction.

{¶24} Mr. Kimbrough's third assignment of error is overruled.

III.

{¶25} Based upon the foregoing, Mr. Kimbrough's three assignments of error are overruled, and the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

J. D. TOMLINSON, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.