[Cite as *State v. Randle*, 2024-Ohio-2888.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     30727 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RACHELLE NICKOLE RANDLE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR-2020-08-2030 |

DECISION AND JOURNAL ENTRY

Dated: July 31, 2024

STEVENSON, Presiding Judge.

{¶1}    Defendant-Appellant, Rachelle Randle, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    R.S. and his half-brother were involved in an ongoing dispute.  According to R.S., his half-brother's mother and Ms. Randle, who was the mother's romantic partner, became involved in the dispute.  When R.S. was at home one evening, he saw a red car driving up and down his street.  He believed the car belonged to his half-brother's mother and noticed it several times.  The car later pulled directly in front of him as he was sitting in his own car, which was parked in the street.  Through the windshield of the red car, R.S. could see his half-brother driving the car and Ms. Randle sitting in the passenger seat.

{¶3}    R.S. followed the red car.  He eventually turned down a street and found the red car waiting for him at the intersection.  Gun fire erupted from the passenger side of the red car, and

R.S. could see Ms. Randle shooting at him. R.S. immediately reported the incident to the police, who responded to Ms. Randle's home shortly thereafter. They found the red car outside the home. Its hood was warm to the touch.

{¶4} A grand jury indicted Ms. Randle on one count of felonious assault, a three-year firearm specification, and a five-year firearm specification. At the conclusion of her trial, a jury found her guilty of felonious assault and the attendant specifications. The trial court merged the specifications and imposed an indefinite sentence of seven to eight years in prison.

{¶5} Ms. Randle now appeals from her conviction and raises three assignments of error for review. For ease of analysis, we consolidate two of her assignments of error.

II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES BROUGHT AGAINST APPELLANT.**

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING APPELLANT'S CRIMINAL RULE 29 MOTIONS BECAUSE THE STATE FAILED TO MEET THE BURDEN OF PRODUCTION FOR THE FELONIOUS ASSAULT WITH FIREARM SPECIFICATIONS.**

{¶6} In her first and third assignments of error, Ms. Randle argues her conviction is based on insufficient evidence and the trial court erred by denying her motion for acquittal. This Court rejects her arguments.

{¶7} This Court reviews the denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *State v. Frashuer*, 2010-Ohio-634, ¶ 33 (9th Dist.). Whether a conviction is supported by sufficient evidence is a question of law, which we

review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  In carrying out this review, our "function . . . is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶8}    Ms. Randle's sufficiency argument is limited to the issue of identity.  She argues that the State failed to prove she was the individual who shot at R.S.  In analyzing the sufficiency of the evidence, we tailor our review to her limited argument and only address the State's evidence as to the identity of the shooter.

{¶9}    "The identity of a perpetrator must be proved by the State beyond a reasonable doubt."  *State v. Dumas*, 2021-Ohio-1534, ¶ 7 (9th Dist.).  "Like any other element of an offense, identity may be established through direct or circumstantial evidence."  *State v. Jackson*, 2017-Ohio-635, ¶ 7 (9th Dist.).

{¶10}  R.S. testified that he and his half-brother were on bad terms.  About a month before this incident, his half-brother fired a gun at him.  He indicated that his half-brother lived about five minutes away with his (the half-brother's) mother and Ms. Randle.  While R.S. did not know Ms. Randle well, he was familiar with her and knew she was in a relationship with the half-brother's mother.  He testified that Ms. Randle and the mother would involve themselves in the disagreements he had with his half-brother.

{¶11}  R.S. operated a food truck from his driveway.  While operating his truck one day, he saw a red car traveling up and down his street.  He testified that he recognized the car and knew

it belonged to his half-brother's mother. The car reappeared later when it was already past 1:00 a.m. At that point, R.S. was sitting in his air-conditioned car waiting for the grease in his food truck to cool. R.S. testified that the red car slowed and pulled up beside his car, which was parked in the street. It then proceeded a short distance down the street, turned around, and drove back toward him. R.S. testified that he could see through the windshield of the red car as it approached. He saw his half-brother driving the car and Ms. Randle in the passenger's seat. The red car slowed again and paused next to the passenger's side of his car. When R.S. engaged his brakes to place his car into drive, the red car sped away. R.S. then turned his car around and tried following the red car.

{¶12} R.S. testified that he eventually turned onto a neighborhood street, believing he had lost the red car. As he turned onto the street, however, he saw the red car waiting at an intersection with its passenger side facing his car. When his car approached the red car, gunfire erupted. He testified that muzzle flashes were coming from the passenger window of the red car. The muzzle flashes allowed him to see the shooter. He testified he was "[m]ore than 100 percent certain" Ms. Randle was the person shooting at him. He explained that Ms. Randle had blond-colored dreadlocks that helped him identify her.

{¶13} R.S. immediately called 911 after the shooting. The State played the recording of his call for the jury. On the call, R.S. initially said his half-brother had shot at him. He then clarified that his half-brother was driving the car that had shot at him. He told the 911 operator the shooter was "the girlfriend." At trial, he clarified that Ms. Randle was the woman to whom he was referring.

{¶14} Two different officers testified as to their interactions with R.S. Officer Michael Bruvarny interviewed R.S. directly after the shooting. He testified that R.S. clearly identified the

shooter as Ms. Randle, noting both her distinctive dreadlocks and the ongoing dispute in which she had involved herself. R.S. also identified Ms. Randle as the shooter when he spoke with Officer Troy Looney to give his written statement. Officer Looney testified that R.S. had no doubt as to who shot him and never changed his story.

{¶15} Officers arrived at Ms. Randle's home within minutes of being dispatched. Officer Joseph Woodin testified that he was one of the officers who responded to Ms. Randle's home. In the driveway of the home, the police found the red car that R.S. had described. Officer Woodin placed his hand on the hood of the car and found that it was warm, despite it being shortly after 2:40 a.m. He testified the warm hood was consistent with the car having been driven recently. There also was testimony that the police collected ten casings from the location where R.S. said the shooting had occurred.

{¶16} As part of a stipulation, Detective Paul Hooper testified as an expert in polygraph testing and examination. Ms. Randle agreed to submit to a polygraph exam, which she completed several months after this incident. As part of the exam, Detective Hooper asked her whether she shot at R.S., whether she shot at R.S. in July 2020, and whether she shot at R.S. in Akron. Detective Hooper testified that Ms. Randle answered no to all three questions. He testified that she failed the exam because the results showed she was being deceptive when she answered those questions.

{¶17} Ms. Randle argues the State failed to prove identity because R.S. did not consistently identify her as the shooter. She argues that he clearly identified his half-brother as the shooter on the 911 call before changing his statement and saying she was the shooter. She notes that it was the half-brother who had a history of shooting at R.S. Further, she notes that the police never tested her for gunshot residue, found a gun, or tested the casings at the scene for DNA.

{¶18} To the extent Ms. Randle challenges the consistency or believability of the State's evidence, those arguments sound in weight rather than sufficiency. *See State v. Calhoun*, 2021-Ohio-1713, ¶ 22 (9th Dist.). A sufficiency review "[does] not resolve evidentiary conflicts or assess the credibility of witnesses . . . ." *State v. Hall*, 2017-Ohio-73, ¶ 10 (9th Dist.). It tasks us to review the evidence in a light most favorable to the prosecution. *Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus.

{¶19} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the State proved the issue of identity beyond a reasonable doubt. *See id.* R.S. identified Ms. Randle as the shooter when speaking with Officer Bruvarny, when giving his statement to Officer Looney, and when testifying at trial. He also said "the girlfriend" was the shooter on the 911 call and explained that he meant Ms. Randle. The jury heard testimony that R.S. was "[m]ore than 100 percent certain" Ms. Randle was the shooter. They also heard testimony that the hood of the red car, which was parked in Ms. Randle's driveway, was warm to the touch when the police arrived just after 2:40 a.m. Even setting aside the results of the stipulated polygraph exam that Ms. Randle failed, the jury reasonably could have concluded that she was the shooter. She has not shown that her conviction is based on insufficient evidence. Accordingly, her first and third assignments of error are overruled.

**ASSIGNMENT OF ERROR II**

**APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶20} In her second assignment of error, Ms. Randle argues her conviction is against the manifest weight of the evidence. We disagree.

{¶21} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider

the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.).

{¶22} Ms. Randle testified in her own defense and presented the testimony of her fiancée, the half-brother's mother. Ms. Randle testified that, in the hours before the shooting, she went to dinner with the mother. The two drank a minimal amount of alcohol with dinner, returned home, and prepared to go to sleep. Ms. Randle testified that, after they arrived home, the half-brother called. As a result of that conversation, she left in the red car, went to the ATM, took out $20, left the money in a specific location for the half-brother, and returned home. The defense produced an ATM receipt to verify that portion of her testimony. The receipt showed that she used an ATM at 11:12 p.m. to take out $20. Ms. Randle testified that she went to bed after completing that task and remained asleep until the police knocked on her door. She denied having any involvement in the shooting.

{¶23} The half-brother's mother testified that the red car belonged to her, she did not get along with her son (i.e., the half-brother), and no one besides her and Ms. Randle ever drove the red car. She testified that she and Ms. Randle went to dinner where she (the mother) consumed one drink. After dinner, she and Ms. Randle returned home and prepared to go to bed. The mother testified she was still awake when the half-brother called and spoke with Ms. Randle. As a result of that conversation, Ms. Randle left for about ten to fifteen minutes before returning home. The mother denied that Ms. Randle ever left the house again after that point. She testified that she and Ms. Randle were asleep when the police knocked on their door.

{¶24} As noted, Ms. Randle voluntarily submitted to a polygraph exam. Detective Hooper testified that, as part of that process, Ms. Randle described her activities in the hours leading up to the shooting. Ms. Randle told the detective that she and the mother went out to dinner but brought their food home to eat because the mother "had a little bit too much to drink . . . ." She said the mother fell asleep after eating her food. She told the detective the mother was snoring when the half-brother called and she left the house to go to the ATM.

{¶25} When cross-examining Ms. Randle, the State asked about her prior, inconsistent statements to Detective Hooper. She initially testified that she did not recall what she said to the detective because, when she spoke with him, there "was a lot going on . . ." in her personal life. The State then played for Ms. Randle a recording of her exchange with Detective Hooper. Ms. Randle listened to her statements on the recording and admitted she made them.

{¶26} Having reviewed the record, we cannot conclude this is the exceptional case where the evidence weighs heavily against Ms. Randle's conviction. *See Croghan*, 2019-Ohio-3970, at ¶ 26 (9th Dist.). The jury heard R.S. testify that he had a clear view of Ms. Randle sitting in the passenger seat of the red car and shooting at him. He repeatedly identified Ms. Randle as the shooter when officers spoke with him at the scene. Although he initially told the 911 dispatcher that his half-brother shot at him, he explained that his half-brother was involved in the shooting because he was driving the red car. R.S. told the dispatcher that "the girlfriend" was the actual shooter. He later explained that Ms. Randle was the person he had called "the girlfriend."

{¶27} Although Ms. Randle claimed she was at home and asleep when the shooting occurred, the jury was not required to believe her testimony. The jury heard testimony that she made prior, inconsistent statements about the events leading up to the shooting. Moreover, this Court "'will not overturn a conviction as being against the manifest weight of the evidence simply

because the trier of fact chose to believe the State's version of events over another version.'" *State v. Warren*, 2020-Ohio-6990, ¶ 25 (9th Dist.), quoting *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.). Ms. Randle has not shown that this is the exceptional case where the evidence weighs heavily against her conviction. *See Otten*, 33 Ohio App.3d at 340. Accordingly, her second assignment of error is overruled.

III.

**{¶28}** Ms. Randle's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

HENSAL, J.
SUTTON, J.
CONCUR.


APPEARANCES:

PAUL E. MEYER, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.