[Cite as *State v. Wallace*, 2024-Ohio-5084.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

JOSEPH WALLACE

    Appellant

C.A. Nos.    30655
                   30656

APPEAL FROM JUDGMENT
ENTERED IN THE
STOW MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE Nos.    2022CRB02075
               2022TRD07083

DECISION AND JOURNAL ENTRY

Dated: October 23, 2024

STEVENSON, Presiding Judge.

{¶1} Defendant-Appellant Joseph Wallace appeals the judgments of the Stow Municipal Court that found him guilty of aggravated menacing, resisting arrest, and failing to stop for a school bus signal, claiming the convictions are against the weight of the evidence. This Court affirms.

I.

{¶2} Mr. Wallace was charged with one count of aggravated menacing in violation of R.C. 2903.21(A), a first-degree misdemeanor; one count of resisting arrest in violation of R.C. 2921.33(A), a second-degree misdemeanor; and failing to stop for a school bus signal in violation of R.C. 4511.75(A), an unclassified misdemeanor. The matter proceeded to a bench trial. The State presented the testimony of two City of Cuyahoga Falls police officers as well as body camera footage from one of the officers. Mr. Wallace presented the testimony of one witness. The court found Mr. Wallace guilty on all three counts and sentenced him.

{¶3} Mr. Wallace timely filed two separate appeals that were consolidated by this Court. He asserts one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE [TRIAL COURT'S] VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶4} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.).

{¶5} It is well-established that "a trier of fact enjoys the best position to assess the credibility of witnesses." *State v. Tyus,* 2020-Ohio-4455, ¶ 57 (9th Dist.). *See also Prince v. Jordan*, 2004-Ohio-7184, ¶ 35 (9th Dist.) ("the jury is free to believe all, part, or none of the testimony of each witness."). This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.), quoting *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.).

{¶6} The event giving rise to this appeal was a traffic stop of Mr. Wallace's vehicle on August 26, 2022. The testimony of the two officers the State presented set forth the following facts. Officer Trevon Burgins ("Burgins") of the Cuyahoga Falls Police Department was on duty as a uniformed police officer operating a marked patrol car. Burgins was driving westbound on

West Portage Trail behind a school bus. The bus came to a stop and activated its flashing lights and stop sign. Burgins observed a black sedan travelling eastbound in a section of the road where there are only two lanes drive past the school bus while it was stopped. Burgins turned into the eastbound lane and initiated a traffic stop of the sedan.

{¶7} When Burgins approached the sedan, he recognized Mr. Wallace and his passenger due to previous interactions with them in his duties as a police officer. Mr. Wallace volunteered that he had a suspended driver's license. When Burgins returned to his cruiser to run Mr. Wallace's license through his computer, he discovered that Mr. Wallace had a warrant from Stow Municipal Court for failure to appear on a disorderly conduct charge. Before informing Mr. Wallace that he would be taken into custody on the warrant, Burgins called for back-up because his previous interactions with Mr. Wallace had been "explosive, and turbulent, and involving weapons[.]"

{¶8} Officer Daniel Zacharias ("Zacharias") arrived on the scene. Burgins informed Mr. Wallace of the warrant and bond amount and permitted him to use his cell phone to make arrangements to post bond. While Mr. Wallace was using his phone, he became increasingly angry, argumentative, and began yelling and using expletives to refer to the officers.

{¶9} Soon thereafter, Officer Joel Moledor ("Moledor") arrived on the scene, which caused Mr. Wallace to become even more agitated. Mr. Wallace recognized Moledor, stating "oh, here's this f *** boy." Based on Mr. Wallace's heightened agitation, Burgins told Mr. Wallace to put his phone down and his hands behind his back as he was now under arrest and that the bond would have to be figured out at the police station. Mr. Wallace refused, insisting that he could not arrange for bond if he did not have access to his phone. Mr. Wallace then continued to utter strings of expletives and racial epithets towards the officers, yelling at them that they could not touch him

because he had a concussion. Mr. Wallace refused to put his hands behind his back and continued yelling expletives in an aggressive manner.

{¶10} Burgins pulled out his Taser in an effort to de-escalate Mr. Wallace. Mr. Wallace moved his hands in front of his body but continued to berate Burgins with expletives and racial slurs, gesturing with his hands and flexing his arms. Based on his training and experience, Burgins believed that this behavior signaled that Mr. Wallace was about to attack him. When Zacharias and Moledor attempted to place Mr. Wallace's arms behind his back to handcuff him, he insisted on being handcuffed with his hands in front. The policy of the Cuyahoga Falls Police is to handcuff behind the back barring injury or pregnancy.

{¶11} Mr. Wallace continued to yank and attempt to pull his arms away from Zacharias and Moledor. Burgins deployed his Taser two times before Mr. Wallace was finally subdued, placed on the ground, and eventually handcuffed. While Mr. Wallace was handcuffed, he continued to scream profanities at the officers, telling them he would beat them up and that he knew members of the Mafia. While being escorted to a police cruiser, Mr. Wallace told Moledor, "I'm beating your f *** ass when I see you in the streets, bitch." After being medically cleared by the Cuyahoga Falls Fire Department, Mr. Wallace was taken to the police station and charged.

{¶12} Mr. Wallace was convicted of aggravated menacing in violation of R.C. 2903.21(A) which provides as follows:

> No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person[.] . . .

{¶13} Mr. Wallace argues that his statement to Moledor that he would "beat[] his f *** ass. . ." was nothing more than angry words, and there was no real possibility that he was in any position to cause anyone serious physical harm because he was handcuffed and on the ground. However, Mr. Wallace's own belief that his statements were false and did not pose a credible threat

is not a factor for aggravated menacing under R.C. 2903.21(A). The terms "*knowingly cause another to believe* that the offender will cause serious physical harm" in R.C. 2903.21(A) mean that the "'subjective belief of the victim is necessary to establish the crime of aggravated menacing.'" (Emphasis added.) *State v. Knoble*, 2008-Ohio-5004, ¶ 21 (9th Dist.), quoting *In re Fugate*, 2002-Ohio-2771, ¶ 10 (10th Dist.). "[A] person can be convicted of aggravated menacing even though the person has not made any movement toward carrying out the threat." *State v. Klempa*, 2003-Ohio-3482, ¶ 24 (7th Dist.). Thus, the relevant question is whether Moledor believed the seriousness of the threats.

{¶14} Moledor testified that he had three previous encounters with Mr. Wallace. One of those encounters involved Mr. Wallace wielding a knife during a verbal dispute with another person. The other two incidents involved Mr. Wallace's altercations with neighbors. Moledor testified that based on Mr. Wallace's behavior during those previous incidents, he believed that the encounter in this matter would also become confrontational.

{¶15} Based on Mr. Wallace's statement to Moledor, "oh, here's this f*** boy[,]" Moledor believed Mr. Wallace would recognize him outside of work. Moledor further testified that he interpreted Mr. Wallace's statement "that he knows mafia people" to mean "[Mr. Wallace is] trying to look at ending my life if he ever caught me . . . ." Because Mr. Wallace knew Moledor and threatened to assault him when he saw him out in the streets, Mr. Wallace's statement to Moledor that "I'm beating your f *** ass when I see you in the streets, bitch" adds further credibility to Moledor's subjective belief as to the seriousness of Mr. Wallace's threat. Burgins testified that he considered Mr. Wallace's threat to be credible because he knew Mr. Wallace had accosted another officer who was off duty at a local Walmart. Moledor testified that he was aware

of that incident. Based on the sum total of these interactions with Mr. Wallace, Moledor believed Mr. Wallace would follow through on his threat if given the opportunity.

{¶16} Based on the foregoing evidence presented to the court that Moledor had a subjective belief that Mr. Wallace would carry out his threats, we cannot say this is an exceptional case where the evidence weighs heavily against the conviction for aggravated menacing.

{¶17} Next, Mr. Wallace was convicted of resisting arrest in violation of R.C. 2921.33(A) which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Mr. Wallace argues that he voluntarily offered his hands in front of his body in preparation to be handcuffed. He maintains that the officers' subsequent act of forcing his hands behind his back was the cause of his attempts to break free, not his failure to comply with the arrest. He further points out that he did not attempt to flee. We disagree with Mr. Wallace.

{¶18} When Mr. Wallace was given permission to use his phone to arrange for bond money, he immediately began muttering expletives and shouting loudly at the officers. After several minutes went by, Mr. Wallace was informed that he was under arrest and would be taken to the police station. The officers present testified that Mr. Wallace had his arms in front of his body, but at the same time was tensing them, balling his hands into a fist, and rocking back and forth. Burgins identified these actions as "pre-attack indicators[,]" not as a display of compliance with being handcuffed. Not until Burgins pointed the Taser at him did Mr. Wallace "place[] one arm over the other in front of his body as if he was going to comply." Mr. Wallace admitted that when Zacharias and Moledor tried to move his arms behind his back, he refused to unlink his hands and put them behind his back despite the officers' repeated requests that he do so. Instead, Mr. Wallace continued to pull and yank his arms away until he was again tased and taken to the ground. This evidence reflects that Mr. Wallace refused to comply with the officers' attempts to handcuff

him and was using force to "interfere with [his] lawful arrest" in violation of R.C. 2921.33(A). Therefore, Mr. Wallace's conviction for resisting arrest is not against the weight of the evidence.

{¶19} This Court has previously held that similar conduct supported a conviction for resisting arrest. In *State v. Mills*, 2002-Ohio-7323 (9th Dist.), the defendant approached the officer with hands balled and clenched at his side and was not responding to the officer's requests to cooperate. *Id.* at ¶ 26. After the officer cuffed the defendant's left hand, the defendant pulled away and refused to cooperate. *Id*. This Court held that the defendant's conviction for resisting arrest was not against the manifest weight of the evidence. *Id*. at ¶ 32. *See also State v. Love*, 2004-Ohio-1422, ¶ 21 (9th Dist.) (jury could reasonably conclude that "[a]ppellant's refusal to place his hands behind his back, 'aggressive' stance, and '[use of] force to keep [the officers] from placing his hands behind his back' satisfied R.C. 2921.33(A).")

{¶20} Finally, Mr. Wallace was convicted of failure to stop for a stopped school bus in violation of R.C. 4511.75(A), which provides as follows:

> The driver of a vehicle . . . upon meeting or overtaking from either direction any school bus stopped for the purpose of receiving or discharging any school child . . . shall stop at least ten feet from the front or rear of the school bus and shall not proceed until such school bus resumes motion, or until signaled by the school bus driver to proceed.

{¶21} Mr. Wallace argues that the State's only evidence on this matter was Burgins' testimony, and there was no video evidence to establish the veracity of his testimony. Although Burgins testified that there was a dashcam in his vehicle, the video from the dashcam was not played in court. Mr. Wallace contends that this video evidence would be dispositive regarding his alleged failure to stop for the school bus, and the State's failure to produce it renders Burgins' testimony not credible. We disagree.

**{¶22}** First, Mr. Wallace has not provided any law which places a burden on the State to corroborate a police officer's testimony with video footage and we will not judicially craft such a requirement. In addition, Mr. Wallace's own witness, the passenger, testified that "[Mr. Wallace] rolled past the stop sign[,]" which corroborates Burgins' testimony. Moreover, Burgins' body camera footage reflects that when he initially approached the vehicle and apprised Mr. Wallace of the reason for the traffic stop, Mr. Wallace said, "yeah . . . that's my bad," which the court could infer was an admission by Mr. Wallace that he acted as Burgins alleged and did not stop for the school bus. Therefore, Mr. Wallace's own statement and evidence showed that he failed to stop for the school bus, and he did not offer any opposing evidence on that point. As the evidence against Mr. Wallace was uncontroverted, there were no evidentiary conflicts for the trial court to resolve. The weight of the evidence tilted solely in favor of the State and showed without opposition that Mr. Wallace did not stop for the school bus. Therefore, Mr. Wallace's conviction for failure to stop for a school bus in violation of R.C. 4511.75(A) was not against the manifest weight of the evidence.

**{¶23}** In summary, the trial court heard the testimony and watched the body camera footage. Upon our thorough review of the record, we conclude that this is not an exceptional case in which the evidence weighed heavily against the convictions. *See Croghan*, 2019-Ohio-3970, at ¶ 26 (9th Dist.). The court, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Mr. Wallace's convictions. *See Otten*, 33 Ohio App. 3d at 340. Mr. Wallace's assignment of error is overruled.

III.

**{¶24}** Accordingly, based on the foregoing, Mr. Wallace's single assignment of error is overruled. The judgments of the Stow Municipal Court are affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.


APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

CONNOR P. MCHUGH, Assistant Law Director, for Appellee.