[Cite as *State v. Pittman*, 2026-Ohio-703.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 25AP0024 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CORA JEAN PITTMAN | | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No. 2024 CR-B 001221 |

DECISION AND JOURNAL ENTRY

Dated: March 2, 2026

STEVENSON, Judge.

{¶1} Defendant-Appellant, Cora Pittman, appeals from the judgment of the Wayne County Municipal Court that found her guilty on one count of violating a civil stalking protection order. This Court affirms.

I.

{¶2} On October 16, 2023, following a full hearing on October 3, 2023, a civil stalking protection order ("CSPO") was issued by the Wayne County Common Pleas Court pursuant to R.C. 2903.214 that named Ms. Pittman as the respondent and listed the protected persons as C.S., C.S.'s husband, and their four children, including the victim in this case, A.D. The CSPO was to be effective until October 13, 2028, and stated that Ms. Pittman was prohibited from having any contact with the protected persons or being present within 500 feet of them.

{¶3} In October 2024 Ms. Pittman was charged with one count of violating a protection order in violation of R.C. 2919.27(A)(2), a misdemeanor of the first degree. Ms. Pittman entered

a plea of not guilty, and the court held a bench trial.  The State presented the testimony of City of Wooster Police Officer Ryan King, C.S., and A.D.  Ms. Pittman presented the testimony of Mr. Richard Yeagley.

{¶4}    The trial transcript reflects the following testimony and evidence.  Officer King testified that on September 21, 2024, he responded to a 911 call from C.S.  When he arrived at her residence, C.S., her daughter A.D., and C.S.'s husband T.S. were present.  Officer King first spoke to C.S. who informed him that A.D. reported to her that Ms. Pittman had driven past the residence, waved, and "flipped  off [A.D.][.]"  C.S. told Officer King she did not personally observe this.  Officer King then spoke with A.D. who informed him that Ms. Pittman drove past the house, slowed down, rolled down the driver's side window, then said hello and "flipped [her] off[.]"  A.D. told Officer King the vehicle was black and identified Ms. Pittman as the person in the vehicle.  Officer King did not speak to T.S. or to any of A.D.'s friends who had allegedly been present at the time Ms. Pittman drove by.

{¶5}    C.S. testified that Ms. Pittman is T.S.'s mother and A.D.'s grandmother.  C.S. further testified that on September 21, 2024, she spoke with Officer King "over my daughter telling me that [Ms. Pittman] had went by and slowed down and hollered something out the window and flipped her off" which was prohibited by the CSPO.  C.S. stated that she knew Ms. Pittman drove a black vehicle.  C.S. was inside her residence when this happened and did not witness it personally, but said A.D. told her about it "[w]ithin probably a minute" after it happened.  C.S. said A.D. was sitting on the front steps of the residence by the front sidewalk, a few feet from the road, when Ms. Pittman drove by.  C.S.'s residence does not have video surveillance and according to C.S., none of her neighbors had their cameras in operation at the time.

{¶6} A.D. testified that on the day in question she was sitting outside with three of her friends between six and seven o'clock p.m. waiting for a limousine to arrive. When asked why, she responded that her friend's sister "was going to winter formal and she was bringing the limo for us to see." A.D. and her friends were on the steps of the front porch close to the road. While they were outside waiting, Ms. Pittman drove by, lowered her window, and said hello. When A.D. looked over, Ms. Pittman waved, then "flipped [her] off and drove off." A.D. also observed that Ms. Pittman had a cigarette in her hand. A.D. did not see anyone else in the vehicle and her view was not obstructed. Directly afterwards, A.D. called for C.S. to come outside, which she did, and C.S. phoned the police. A.D. confirmed that she and C.S. both spoke with Officer King and that she made a written statement. A.D. was aware that there was a protection order in effect that prevented Ms. Pittman from being allowed at her house. At the conclusion of A.D.'s testimony, a certified copy of the CSPO was admitted into evidence without objection.

{¶7} Ms. Pittman presented the testimony of Mr. Richard Yeagley, who testified that on the day in question, Ms. Pittman was in Ashland, Ohio with him attending his grandson's birthday party between the hours of one and five o'clock p.m. He testified that they got back to his house "a little after five, somewhere in there and then we went to my house and stayed there." He denied that Ms. Pittman ever left his residence that night. Upon cross-examination, he could not produce any evidence proving that he was at the birthday party with Ms. Pittman such as text messages, photos, or GPS coordinates from his mobile phone. In Mr. Yeagley's opinion, C.S. and A.D. were lying when they said Ms. Pittman drove by their house.

{¶8} The court found Ms. Pittman guilty and after conducting a presentence investigation, sentenced her to 24 months of community control, imposed a $200 fine, and ordered

her to comply with the terms and conditions of the protection order.  The court specifically stated in its oral ruling that it found A.D. credible and Mr. Yeagley not credible.

{¶9}   Ms. Pittman timely appealed and asserts three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED IN ENTERING A JUDGMENT OF CONVICTION AGAINST MS. PITTMAN FOR VIOLATING A PROTECTION ORDER, IN VIOLATION OF R.C. 2919.27(A)(2), BECAUSE THE STATE FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE OFFENSE BEYOND A REASONABLE DOUBT.**

{¶10}   Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  "A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test of adequacy." *State v. Wilk*, 2023-Ohio-112, ¶ 9 (9th Dist.), citing *In re R.H.*, 2017-Ohio-7852, ¶ 25 (9th Dist.); *Thompkins* at 386.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, (1991), paragraph two of the syllabus.

{¶11}   Ms. Pittman was convicted of violating R.C. 2919.27(A)(2), which provides as relevant to this matter that "[n]o person shall recklessly violate the terms of . . . [a] protection order issued pursuant to section . . . 2903.214 of the Revised Code."  R.C. 2903.214(F)(1) requires that the court deliver a copy of the protection order to the respondent, among others, and further requires the issuing court to "direct that a copy of the order be delivered to the respondent on the same day that the order is entered."  R.C. 2903.214(F)(1).

{¶12} The General Assembly amended R.C. 2919.27 in 2017 "to specifically eliminate the need for proof of service." *State v. Adkins*, 2023-Ohio-3000, ¶ 18 (9th Dist.). Division (D) of that section now provides:

> In a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued, and proves that the defendant recklessly violated the terms of the order or agreement.

Consequently, to show a violation of R.C. 2919.27(A)(2), "the State need only prove that a defendant was shown a copy of the protection order or was informed of its issuance by a judge, magistrate, or law enforcement officer." *Adkins* at ¶ 18.

{¶13} Here, Ms. Pittman argues that the evidence produced at trial was insufficient to establish that: (1) she was served with the protection order or that she was otherwise constructively notified of it pursuant to R.C. 2919.27(D); and (2) that she acted recklessly.

{¶14} As a threshold matter, we must address the State's argument that Ms. Pittman did not raise an objection at trial or make any motion alleging a lack of service or lack of knowledge on her part of the CSPO and therefore waived the issue for purposes of appeal. Ms. Pittman's "not guilty" plea preserved her right to object to the alleged insufficiency of the evidence as to *each* element of the offense. *State v. Jones*, 91 Ohio St.3d 335, 346 (2001), citing *State v. Carter*, 64 Ohio St.3d 218, 223 (1992); *Mathews v. U.S.,* 485 U.S. 58 (1988*),* syllabus ("simple not guilty plea puts the prosecution to its proof as to *all* elements of the crime charged[.]") (Emphasis added.). Therefore, Ms. Pittman's failure to challenge service of the CSPO did not waive that issue for purposes of appellate review.

{¶15} Turning to the merits of Ms. Pittman's argument regarding service of the CSPO, we conclude the evidence was sufficient to prove that Ms. Pittman had been served with the CSPO and that a judge, magistrate, or law enforcement officer informed her of the issuance of the order pursuant to R.C. 2919.27(D). The copy of the CSPO admitted into evidence states on page five in the section entitled "TO THE CLERK" that the Clerk was ordered to serve a copy of the CSPO on Respondent pursuant to Civ.R. 65.1(C)(3). Thus, Ms. Pittman is one of the parties to whom a copy of the order was ordered to be served. In the section beside that entitled "NOTICE OF FINAL APPEALABLE ORDER" the CSPO states that copies of the order "*were served on or delivered to the parties indicated pursuant to Civ.R. 5(B) and 65.1(C)(3), including ordinary mail on 10/16/2023.*" (Emphasis added.) The "By:" line directly below that notice contains the handwritten signature of a representative from the Clerk of Court as the person who carried out the service or delivery. Directly underneath that line is the stamp and seal of the "Clerk of Courts, Wayne County, Ohio" indicating that the document is a certified copy. Therefore, when viewing the evidence in the light most favorable to the prosecution, the CSPO contains certified confirmation that it was served on or delivered to Ms. Pittman in accordance with the applicable Civil Rules on the same date the CSPO was issued, which is sufficient to establish that the order was properly served upon Ms. Pittman for purposes of determining whether she violated the CSPO. *See contra Cleveland v. Bolden*, 2023-Ohio-1476, ¶ 16 (8th Dist.) (evidence insufficient because the record did not contain confirmation that the order was mailed and served upon the defendant; the certificate of service was not signed, and did not indicate who mailed the order or when it was mailed.). Further, these indicia of service constitute some evidence that, if viewed in the light most favorable to the prosecution, establish that that the defendant was shown a copy of the

protection order by a law enforcement officer which also satisfies the provisions of R.C. 2919.27(D). Ms. Pittman's argument on this issue is overruled.

{¶16} We turn next to Ms. Pittman's argument that the State failed to present legally sufficient evidence that Ms. Pittman "recklessly" violated the terms of the CSPO as required to show a violation of R.C. 2919.27(A)(2). Under R.C. 2901.22(C):

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶17} In support of her argument, Ms. Pittman submits that the court erred in relying "exclusively" on the uncorroborated eyewitness testimony of the minor victim, A.D., pointing out that Officer King did not interview any of A.D.'s friends who could have confirmed or denied her account. Ms. Pittman also emphasizes the fact that there were no cameras on or near the scene that captured what happened. It is well-established that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration. *State v. Knowles*, 2004-Ohio-6080, ¶ 9 (9th Dist.); *State v. Matha*, 107 Ohio App.3d 756, 759 (9th Dist. 1995). Ms. Pittman's argument on this point is also overruled.

{¶18} Next, Ms. Pittman argues that "[a] mere drive-by accompanied by a rude gesture, without more, does not demonstrate heedless indifference to whether the conduct violated the order." She states in support that the court's characterization of the alleged conduct as "a de minimis violation" means that there is an "absence of proof that [she] recklessly engaged in conduct constituting a meaningful violation of the protection order." We disagree.

{¶19} In addition to prohibiting Ms. Pittman from having any contact with or being present within 500 feet of the protected persons, the CSPO prohibited Ms. Pittman from entering

various structures where the protected persons might be located and from interfering with their right to occupy the residence at the address listed on the CSPO. Thus, the CSPO listed several types of prohibited conduct. Simply because the court considered a brief drive-by to be "de minimis" and perhaps not as severe as other potential violations, such as physical contact or entering the residence, does not mean that Ms. Pittman's presence within 500 feet of a protected person did not constitute sufficient evidence of a violation. The judge's comment was more just his opinion that this violation does not rise to the most serious version of this offense, akin to commenting that a traffic offender was speeding by traveling 36 mph in a 35 mph zone. While the offense may be "de minimis" or a less serious version of the offense in the eyes of the court, it is still a violation. By slowly driving past the residence of C.S. and A.D., waving to, and gesturing rudely towards A.D., Ms. Pittman engaged in conduct that violated the CSPO. Therefore, by behaving in this manner despite knowing that it might constitute a violation of the CSPO, Ms. Pittman acted with "heedless indifference to the consequences[.]" R.C. 2901.22(C). Ms. Pittman's argument that the evidence was insufficient to show that she acted recklessly is overruled.

{¶20} Accordingly, based on the foregoing, we conclude that viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the essential elements of violating a protection order in violation of R.C. 2919.27(A)(2) were proven beyond a reasonable doubt. Ms. Pittman's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ERRED IN FINDING MS. PITTMAN GUILTY OF VIOLATING A PROTECTION ORDER BECAUSE THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶21} Here Ms. Pittman argues that her conviction is against the manifest weight of the evidence because there was no corroborating evidence to support the victim's eyewitness

testimony, there was contradictory testimony from a defense alibi witness, and the trial court characterized the violation as "de minimis" when it orally rendered its guilty verdict. Ms. Pittman points to the fact that Officer King did not interview A.D.'s friends who were present, and that A.D. was the only eyewitness. She also states that the court's characterization of Ms. Pittman's conduct as a "de minimis violation" means that the court regarded as "weak" and "borderline" the evidence that Ms. Pittman's acted recklessly. We disagree.

{¶22} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.). "This Court will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.).

{¶23} Based on our review of the record and the applicable law, we cannot conclude that the trier of fact clearly lost its way in finding that Ms. Pittman violated the protection order. The court heard testimony from three witnesses presented by the State, including the victim. A.D.'s testimony was consistent with the testimony of both Officer King and C.S. as to what A.D. told them.

{¶24} Ms. Pittman's alibi witness, Mr. Yeagley, testified that Ms. Pittman was with him at the time of the alleged violation, but there was no corroborating evidence of that fact. Mr.

Yeagley testified that he and Ms. Pittman were at a family birthday party, but other than Mr. Yeagley's word, there was no other evidence that Ms. Pittman was there. Keeping in mind that the court, as the trier of fact, was in the best position to evaluate the credibility of the testimony and evidence, it was free to believe the State's version of the events as presented by three witnesses and reject the testimony of Ms. Pittman's single alibi witness. *See State v. Shank*, 2013-Ohio-5368, ¶ 29 (9th Dist.). The court specifically commented that it found Mr. Yeagley not credible and A.D. credible. While this court is not required to accept the trier of facts' credibility determinations, Ms. Pittman has not shown those determinations are not supported by the weight of the evidence in this case. This Court is mindful of the well-established principle that "the trier of fact is in the best position to determine the credibility of witnesses[.]" *State v. Johnson*, 2010-Ohio-3296, ¶ 15 (9th Dist.).

{¶25} The court did not elaborate specifically on the reasons for its characterization of the violation as "de minimis," but contrary to Ms. Pittman's argument, the court did not indicate in any way that its statement pertained to a weakness in the State's evidence of Ms. Pittman's culpable mental state. As previously discussed, that statement seems most likely a description of the seriousness of the violation in terms of the level of Ms. Pittman's intrusion into the prohibited space, *i.e.,* she drove by the residence but did not enter it or make physical contact with anyone.

{¶26} Based on the foregoing, we cannot conclude that this is the exceptional case where the evidence weighs heavily against the conviction. Accordingly, the court's determination that Ms. Pittman violated the protection order is not against the manifest weight of the evidence. Ms. Pittman's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO HEARSAY STATEMENTS IN VIOLATION OF**

**THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

{¶27} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[.]" Here, Ms. Pittman argues that she was denied effective assistance of counsel because defense counsel failed to object to hearsay testimony by C.S. and Officer King regarding statements made to them by A.D. when neither C.S. nor Officer King witnessed the conduct that was the subject of A.D.'s statements. She argues that the testimony was offered to prove she committed the alleged conduct and was therefore inadmissible hearsay because Officer King and C.S. were simply repeating A.D.'s out of court statements. Ms. Pittman maintains that defense counsel's failure to object allowed the admission of this testimony, which in turn bolstered the credibility of A.D., the State's only eyewitness. Ms. Pittman submits that counsel's deficient performance in failing to object prejudiced her because had counsel objected and been successful, the court would have been left with only A.D.'s uncorroborated testimony. Ms. Pittman argues that under those circumstances, there would have been a reasonable probability that excluding the hearsay testimony would have altered the outcome of her trial.

{¶28} To prevail on a claim of ineffective assistance of counsel, Ms. Pittman must establish (1) her counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and (2) prejudice, *i.e.*, but for her counsel's deficient performance, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that "fall[s] below an objective standard of reasonable representation[.]" *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To establish prejudice, Ms.

Pittman must show that that there existed "a reasonable probability that, but for [her] counsel's errors, the outcome of the proceeding would have been different." *State v. Sowell*, 2016-Ohio-8025, ¶ 138. Both prongs under *Strickland* must be established to support an ineffective assistance of counsel claim. *Strickland* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. The defendant must overcome the presumption that, under the circumstances, the challenged action "'might be considered sound trial strategy.'" *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

{¶29} In this case, defense counsel's performance was not deficient because the evidence reflects that the statements are not hearsay as they were not offered for the truth of the matter asserted, but instead, to show why C.S. called the police and why Officer King investigated in the manner he did. Defense counsel cross-examined C.S. and Officer King to establish that they did not witness Ms. Pittman drive by the home and were not attempting to corroborate what A.D. saw, but rather, were explaining the actions they took after A.D. reported Ms. Pittman's actions to them. Lastly, it may be considered sound trial strategy to permit C.S. and Officer King to testify to what A.D. told them to determine if A.D. would testify differently at trial and then attempt to impeach her credibility if she did.

{¶30} Furthermore, upon a review of the record, we conclude that even if her counsel had been deficient in the manner Ms. Pittman alleges, considering the State's other evidence that proved her conduct, *i.e.,* the victim A.D.'s eyewitness testimony, Ms. Pittman could not meet her burden of demonstrating that she was prejudiced by counsel's performance. In reaching its decision, the court expressly stated that it found A.D. credible and Ms. Pittman's alibi witness not credible and made no mention of the hearsay testimony of Officer King and C.S. as factoring into

its decision. Thus, the court's determination of Ms. Pittman's guilt was apparently not dependent upon the hearsay testimony of Officer King and C.S. in the first instance. Therefore, the exclusion of that testimony would not have affected the court's weighing of the evidence and the outcome in this matter. Ms. Pittman's third assignment of error is overruled.

III.

{¶31} Ms. Pittman's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

YU KIM-REYNOLDS, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and JOSEPH SALZGEBER, Assistant Prosecuting Attorney, for Appellee.