[Cite as *State v. Jackson*, 2026-Ohio-1748.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

v.

SHAUN JACKSON

    Appellant

C.A. No.    31449

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2024-05-1794

DECISION AND JOURNAL ENTRY

Dated: May 13, 2026

---

STEVENSON, Judge.

{¶1}	Defendant-Appellant Shaun Jackson appeals from the judgment of the Summit County Court of Common Pleas that found him guilty on two counts of felonious assault with firearms specifications, one count of having weapons under disability, one count of improper handling of firearms in a motor vehicle, and one count of aggravated menacing.  We affirm.

I.

{¶2}	The jury heard the following testimony.  On October 13, 2023, Oneal Jackson ("Oneal") picked up T.Y. from work with his vehicle.  Mr. Jackson, who is Oneal's cousin, was also in the vehicle.  T.Y. got into the driver's seat and Oneal moved to the rear sat behind her.  Mr. Jackson was in the rear passenger seat. T.Y. then drove to pick up her friend, P.R., from work.  P.R. got into the front passenger seat. From there, T.Y. drove to Oneal's appointment with a car mechanic. They missed the appointment so T.Y. headed towards Mr. Jackson's residence at Nadia Court in Akron.  At one point, Oneal and Mr. Jackson began arguing and Mr. Jackson told Oneal

"[w]ell, have that bitch take me home," referring to T.Y. While on the way to Nadia Court, T.Y. observed Mr. Jackson in the rear-view mirror texting on his mobile phone. Mr. Jackson kept telling T.Y. "I got something for you[,]" which T.Y. took as a threat.

{¶3} Upon arriving at Nadia Court, T.Y. pulled into a parking space facing the apartment building. Oneal and Mr. Jackson continued to argue. While the car was still parked, T.Y. saw a woman walk quickly out of the apartment building and head straight to the rear passenger door where Mr. Jackson was sitting. T.Y. had seen the woman once before and assumed at that time that she was Mr. Jackson's girlfriend based on the way they were interacting. Mr. Jackson had the car door open, and the woman briefly spoke with him then "hurried up and went in the apartment." According to T.Y., shortly after the woman walked away, Mr. Jackson fired a revolver right next to her ear and the bullet went through the front windshield of the car. T.Y. testified that the bullet came within one inch of her head, so close that she felt the movement of the air as it flew by. After the bullet was fired, Oneal yelled "[y]ou shot at my car, and [P.R.] started screaming." T.Y. then saw Mr. Jackson point the firearm at P.R. and the tip of the gun touched P.R.'s face.

{¶4} Moments later, Mr. Jackson hit T.Y. in the face with the handle of the gun. Mr. Jackson then exited the vehicle and T.Y. drove away toward her home on Chittenden Street with Oneal and P.R. still in the vehicle. While en route to her house, T.Y. called 911, reported what happened, and told the 911 operator that she was bleeding. After T.Y., Oneal, and P.R. arrived at the Chittenden Street residence, T.Y. began yelling loudly, throwing things, and blaming Oneal for what happened because he was the one who brought Mr. Jackson with him to pick up T.Y.

{¶5} The EMS responded to T.Y.'s residence and the police arrived shortly thereafter. Akron Police Officer Adam Semchee and another unidentified officer spoke with T.Y., Oneal, and P.R. while the EMS administered treatment to T.Y. Officer Semchee observed T.Y. to have

bruising and swelling on the left side of her face in the jaw area. T.Y. told the police that Mr. Jackson was the person who shot towards her and hit her with a gun. T.Y. did not know who had the gun in the first place or how anyone in the car came into possession of a gun. She did not see a gun in the car before the shot was fired. She did not know if the woman who approached the vehicle had a gun.

{¶6} Officer Semchee later spoke to T.Y.'s son who had been upstairs in the house when T.Y. arrived. He came downstairs to find out what happened. Unbeknownst to Officer Semchee, several minutes after T.Y.'s 911 call, T.Y.'s son had also placed a 911 call and reported that his mother was being hit in the face by a male named "Neal" who had a gun. At the time of the son's call, Officer Semchee was speaking with T.Y. and did not hear the call come through dispatch.

{¶7} Officer Semchee examined Oneal's car and observed the bullet hole and spidering in the windshield as well as shards of glass near the wiper blades. Based on his training and experience, he described that type of damage as being caused when a bullet is fired from the inside of a vehicle then "tumble[s]" when it hits the windshield.

{¶8} T.Y. was transported to the hospital and treated by Karen DePaul, a trauma nurse in the SANE (sexual assault nurse examiner) Unit. T.Y. told Ms. DePaul that Mr. Jackson was the person who shot towards her and hit her with a gun. According to Ms. Depaul, T.Y.'s injuries showed blunt force trauma that would be consistent with being struck with a firearm.

{¶9} After T.Y. was transported to the hospital, Officer Semchee went to Nadia Court to investigate further but he did not find any witnesses. He observed shards of glass on the ground and saw a bullet hole in a wood fence but could not say for sure if they were related to this incident.

{¶10} Mr. Jackson was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(2), R.C. 2903.11(D)(1)(a), felonies of the second degree, with firearm specifications

in violation of R.C. 2941.145(A); one count of having weapons under disability in violation of R.C. 2923.13(A)(2), R.C. 2923.13(B), a felony of the third degree; one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(A), R.C. 2923.16(I), a felony of the fourth degree; and one count of aggravated menacing in violation of R.C. 2903.21(A), R.C. 2903.21(B), a misdemeanor of the first degree.

{¶11} Mr. Jackson pleaded not guilty to the charges and the matter proceeded to a jury trial. The State presented the testimony of T.Y., Officer Semchee, and Ms. DePaul. Mr. Jackson did not call any witnesses or testify in his defense at trial. The State's exhibits were admitted into evidence without objection and included police body camera video footage, T.Y.'s medical records, photographs of T.Y. and P.R.'s injuries, and photographs of various scenes at Nadia Court.

{¶12} Mr. Jackson moved for acquittal pursuant to Crim.R. 29(A) at the conclusion of the State's evidence and again after informing the court that he was not presenting any evidence. The motion was denied both times. The jury found Mr. Jackson guilty on all five counts, including the firearm specifications, and he was sentenced. Mr. Jackson timely appealed and asserts four assignments of error for our review. We will review his assignments out of order and in a consolidated fashion for ease of analysis.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST MR. SHAUN JACKSON.**

**ASSIGNMENT OF ERROR III.**

**THE TRIAL COURT ERRED IN DENYING MR. SHAUN JACKSON'S RULE 29 MOTION FOR ACQUITTAL.**

{¶13}   Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). A sufficiency review does not "resolve evidentiary conflicts or assess the credibility of witnesses . . . ." *State v. Hall*, 2017-Ohio-73, ¶ 10 (9th Dist.). "A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test of adequacy." *State v. Wilk*, 2023-Ohio-112, ¶ 9 (9th Dist.), citing *In re R.H.*, 2017-Ohio-7852, ¶ 25 (9th Dist.); *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶14}   Crim.R. 29(A) provides that the trial court "on motion of a defendant . . . shall order the entry of a judgment of acquittal of one or more offenses charged . . . if the evidence is insufficient to sustain a conviction . . . ."  "There is no difference between the standard of review for a challenge to the sufficiency of the evidence and that for a motion for acquittal under Crim. R. 29(A)." *State v. Rivera*, 2023-Ohio-1788, ¶ 37 (9th Dist.).

{¶15}   When a defendant enters a not guilty plea, he has generally preserved the issue of sufficiency for appeal. *State v. Brewer*, 2009-Ohio-593, ¶ 25-26.  However, we note that at trial, when Mr. Jackson moved for acquittal pursuant to Crim.R. 29(A), he conceded that the State had sufficient evidence on the aggravated menacing charge and excluded that charge from his motion. Therefore, Mr. Jackson conceded the sufficiency of the evidence at trial regarding the aggravated menacing charge, he waived it for purposes of appeal. Therefore, we will not address the aggravated menacing charge under our analysis of the sufficiency of the evidence.

**FELONIOUS ASSAULT**

{¶16} Mr. Jackson argues that there was insufficient evidence for his convictions for felonious assault with a firearms specification against P.R. and T.Y. R.C. 2903.11(A)(2) prohibits felonious assault and provides that "[n]o person shall knowingly. . .[c]ause or attempt to cause physical harm to another. . . by means of a deadly weapon or dangerous ordnance." As to T.Y., Mr. Jackson argues that while the evidence established that she suffered injuries and that a gun was discharged, the State failed to present sufficient evidence that Mr. Jackson was the person who discharged the firearm or struck T.Y. with it. As to P.R., Mr. Jackson argues that the State failed to satisfy its burden because T.Y. testified that she "saw *the gun* get pushed into [P.R.'s] face," but that she never testified Mr. Jackson was the person with the gun. (Emphasis added.)

{¶17} "In any criminal prosecution, the State must prove the identity of the perpetrator beyond a reasonable doubt." *State v. Wilson*, 2024-Ohio-917, ¶ 7 (9th Dist.). Here, the State sufficiently proved that Mr. Jackson committed felonious assault with a gun against both victims. T.Y. testified that Mr. Jackson had a gun and shot it:

Q: [State's counsel] What happens once [the woman] leaves?

A: [T.Y.] Once she made it to her apartment . . . that's when the gunshot just went off.

Q: You said a gunshot goes off. Who had a gun?

A: Shaun.

. . .

Q: Do you recall, did the gunshot go anywhere in the vehicle?

A. It went in the windshield . . . .

. . .

Q: What happens after that gunshot goes off?

A: Oneal was like, "You shot at my car," and [P.R.] started screaming . . . .

. . .

Q: And then did anything else happen with that gun?

A: . . . And after that is when I got hit with the gun.

. . .

Q: You said the gun then came over into your face?

A: Yes, I got hit in the face. Literally, like [Mr. Jackson] took the gun, and I got hit directly in the face.

. . .

Q: Do you recall how many times you were hit in the face?

A: Once.

Q: What happens after you are hit [in] the face?

A: Then he got out . . . . And that's when I called 911.

Q: You said "he" got out of the car. Was that Shaun Jackson?

A: Yes.

. . .

Q: But it's your testimony that you absolutely know who did this to you?

A: Yes.

Q: And who was that?

A: That would be Shaun Jackson.

**{¶18}** T.Y. also identified Mr. Jackson in court as the perpetrator:

Q: The person that you've been referring to as Shaun Jackson, is he in the courtroom today?

A: Yes.

Q: Can you point him out and describe an article of clothing that he's wearing?

THE COURT: Record reflects she has pointed to the Defendant, Shaun Jackson.

{¶19} Ms. DePaul testified to T.Y.'s statements to her for purposes of T.Y.'s medical treatment at the hospital. In that statement., T.Y. told DePaul that:

"I took [Mr. Jackson] home. [Mr. Jackson's] girlfriend came out of the apartment when [Mr. Jackson] was still in the backseat with the door open. She hurried back in the house. Within seconds, I heard this big pop in my right ear and there was a gunshot. He said, 'Bitch, you are lucky I didn't kill you.' He . . . leaned up and shot the gun off by my ear . . . . He pointed the gun at [P.R.] and shoved it to her left cheek. And when he did that, he reached over and hit me in the nose with the gun."

{¶20} Based on the foregoing, the State presented sufficient evidence that T.Y. clearly identified Mr. Jackson on the record as the person who pointed the gun at her, shot at the windshield, and hit her with the gun.

{¶21} T.Y. testified as follows regarding what happened to P.R. after Mr. Jackson shot towards T.Y. into the windshield:

Q: [State's counsel] And [when P.R. was screaming] did anything else happen with that gun?

A: After that . . . [Mr. Jackson] took the gun and pretty much like pointed it at [P.R.], like kind of pushed it. . . .

Q: You saw the gun get pushed into [P.R.'s] face?

A: Yes

. . .

Q: Do you know if that gun made contact with [P.R.'s] face?

A: The tip of it did touch her face.

{¶22} Based on the foregoing testimony, the State produced sufficient evidence that Mr. Jackson knowingly attempted to harm P.R. with a gun. Appellate courts have recognized that circumstances similar to those here involving gunshots in the vicinity of multiple victims support separate convictions relating to each victim. *See State v. Prater*, 2018-Ohio-932, ¶ 26 (10th Dist.)

("Several courts have upheld multiple felonious assault convictions where the evidence established that a single shot was fired by a defendant toward multiple victims in the line of fire.").

{¶23} As to both felonious assault charges, Mr. Jackson points out that T.Y. did not know if the woman who approached the vehicle had a gun and whether Oneal or Mr. Jackson had a gun, and thus, there were other potential perpetrators. Mr. Jackson also states as significant is the "complete absence of any physical, forensic, or corroborative evidence linking Mr. Jackson to a firearm." Mr. Jackson further alleges that there were inconsistencies in T.Y.'s account as to whether she was able to see Mr. Jackson with the gun in her peripheral vision. He also raises the issue of the second 911 call that may have implicated Oneal as the perpetrator.

{¶24} As for Mr. Jackson's arguments that the woman, Oneal, and Mr. Jackson all could have possessed and shot a gun, that there were inconsistencies in T.Y.'s testimony, and the second 911 call implicated Oneal, those are issues of weight and credibility and not sufficiency of the evidence. We will address Mr. Jackson's arguments regarding the manifest weight of the evidence under his second assignment of error. As for his other arguments, Mr. Jackson does not cite any case law requiring physical, forensic, or corroborative evidence linking Mr. Jackson to a firearm for the evidence to be considered sufficient. *See, e.g., State v. Williams*, 2019-Ohio-10, ¶ 22 (8th Dist.) ("Physical evidence is not required to sustain a conviction."). As for the lack of shell casings, that is consistent with T.Y.'s testimony that Mr. Jackson used a revolver, which as Officer Semchee explained in his testimony, does not emit shell casings. Furthermore, "[i]t is well-established that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration." *State v. Pittman*, 2026-Ohio-703, ¶ 17 (9th Dist.).

{¶25} Mr. Jackson's arguments are overruled as to his convictions for felonious assault with a firearm specification.

## WEAPONS UNDER DISABILITY

{¶26} R.C. 2923.13(A)(2) prohibits having weapons while under disability and provides that "no person shall knowingly acquire, have, carry, or use any firearm . . . if . . . [t]he person is under indictment for or has been convicted of any felony offense of violence . . . ." Mr. Jackson does not challenge that he was under disability as the parties stipulated to his previous domestic violence conviction. He argues that the evidence was insufficient to prove this charge because the State failed to produce any evidence that he actually or constructively possessed or used a firearm. In support, Mr. Jackson alleges that when T.Y. saw the firearm, she assumed it was Mr. Jackson who shot it and struck her with it and did not actually see him holding the firearm because she was looking straight ahead. He claims that there were no witnesses that actually saw Mr. Jackson with a gun, and therefore, no reasonable jury could conclude that it was Mr. Jackson and not Oneal who was in possession of a gun that day. We disagree.

{¶27} In addition to T.Y.'s and Ms. DePaul's testimony recited above which established that Mr. Jackson - not Oneal - possessed a gun, T.Y. testified as follows on this particular point:

Q: [State's counsel] During the final argument when a gun was shot, you didn't turn around to see who shot it, did you?

A: No.

Q: The only thing you saw in your periphery was the barrel of the revolver, true?

A: *Like I said, it was Shaun*. When I did see the barrel, true, but yes.

(Emphasis added.).

{¶28} Based on all the foregoing testimony, we disagree with Mr. Jackson that there was no evidence that he possessed or used a firearm. There was sufficient evidence for the jury to conclude that Mr. Jackson possessed and used a firearm.

**IMPROPERLY HANDLING FIREARM**

{¶29} R.C. 2923.16(A) provides that "[n]o person shall knowingly discharge a firearm while in or on a motor vehicle." In challenging his conviction for improperly handling firearms in a motor vehicle, Mr. Jackson essentially reiterates all the arguments made above concerning the other charges. For all the same reasons, Mr. Jackson failed to show that the State's evidence was insufficient to establish that he is the person who possessed and discharged a firearm while in Oneal's vehicle.

**CRIM.R. 29 (A) MOTION FOR ACQUITTAL**

{¶30} Mr. Jackson argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal because the State failed to present sufficient evidence identifying him as the person who committed the offenses. Mr. Jackson maintains that, at most, the State demonstrated only that someone had a gun but did not establish that he was that person. Mr. Jackson argues that the uncertainty surrounding the shooter's identity creates reasonable doubt because the State necessarily failed to establish an essential element of the crimes charged; that is, that Mr. Jackson was the perpetrator.

{¶31} Again, this is essentially the same argument that Mr. Jackson made regarding the shooter's identity under his challenge to the other charges which we have thoroughly analyzed above. Based on all the testimony and evidence recited previously, there was sufficient evidence from which the jury could conclude that Mr. Jackson is the one who possessed a gun, shot it into the windshield, then hit T.Y. and touched P.R.'s face with it.

{¶32} Accordingly, Mr. Jackson's first and third assignments of error are without merit and overruled.

**ASSIGNMENT OF ERROR II.**

**MR. SHAUN JACKSON'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION.**

{¶33} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.). This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.).

{¶34} Mr. Jackson states that his convictions are against the manifest weight because the evidence at trial presented conflicting accounts of who had the gun, who fired it, and who struck T.Y. He argues that T.Y.'s identification of him as the person who fired the gun and struck her was based on assumption and not observation. He also points to the second 911 call placed from T.Y.'s son identifying "Neal," not Mr. Jackson, as the armed assailant; the fact that the police found no gun, ammunition, shell casings, or witnesses at Nadia Court; and the presence of other potential assailants – the woman and Oneal. In sum, Mr. Jackson argues that T.Y.'s inability to clearly see who fired the gun and struck her combined with the presence of other assailants created substantial reasonable doubt and that "[t]he jury clearly lost its way by selecting the least supported explanation." He maintains that his convictions represent "precisely the type of miscarriage of

justice that the manifest-weight standard is designed to remedy" and that "[n]o reasonable jury . . . could have concluded that the State met its burden."

{¶35} We note as a threshold matter that Mr. Jackson's challenge here is limited to whether Mr. Jackson was the person who possessed and discharged a gun, then used it to strike T.Y. We presume he is not challenging his aggravated menacing conviction as it does not involve the use of a weapon. R.C. 2903.21(A) (Aggravated menacing) provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person . . . ." Therefore, we will treat Mr. Jackson's manifest weight argument as pertaining only to his convictions for felonious assault, having a weapon under disability, and improper handling of a firearm.

{¶36} Based on our review of the record and the applicable law, we cannot conclude that the jury clearly lost is way in finding Mr. Jackson guilty of felonious assault with a firearm, having weapons under disability, and improper handling of a firearm in a motor vehicle. The court heard testimony from T.Y., Officer Semchee, and Ms. DePaul, and viewed the body camera video footage and photographs offered into evidence by the State. All three witnesses' testimonies were consistent regarding T.Y.'s identification of Mr. Jackson as the person who possessed the gun, shot it into the windshield, then used it to strike T.Y.

{¶37} While the second 911 call was not introduced into evidence, Officer Semchee testified from the dispatch notes of the 911 call, which reflected that "'[c]aller is attacking his mom. Male has [a] gun. Male hit her in the face. Unknown clothing. Male's name is Neal.'" Notably, T.Y.'s son was not an eyewitness to the incident that occurred in Oneal's car at Nadia Court. Furthermore, the jury heard T.Y. explain in her testimony that when she arrived home with Oneal and P.R. after calling 911, she was "yelling at Oneal Jackson," "threw [her] chair," "flipped

[her] table," and blamed Oneal "for having [Mr. Jackson] in the car" when he picked up T.Y. from work. T.Y. did not know her son was upstairs at that time, and when he came downstairs T.Y.. was "bleeding" and "cussing and throwing stuff[.]" Certainly T.Y.'s son could have misconstrued T.Y.'s statements, appearance, and the commotion to mean that Oneal was the person who had a gun and used it to harm T.Y.

{¶38} Additionally, on the police body cam footage, Oneal is shown seated on the couch directly behind where T.Y. was standing as she was speaking with the police. Thus, clearly T.Y. was comfortable being near Oneal, and at no time did T.Y. implicate Oneal to either the police or the EMS personnel. As T.Y. was in a highly agitated state while she was relating the incident to the police and EMS, it is unlikely that she would have permitted Oneal's presence or refrained from implicating him if he had been the person who shot the gun and used it to strike her. Moreover, Officer Semchee testified that he spoke to T.Y.'s son at the scene but the son did not identify Oneal as the shooter. Furthermore, Officer Semchee did not testify that he observed any fighting between T.Y and Oneal when he arrived on scene or that he heard any accusations by either T.Y. or P.R. that Oneal was the shooter.

{¶39} Keeping in mind that the jury, as the trier of fact, was in the best position to evaluate the credibility of the testimony and evidence, it was free to believe T.Y. and reject the son's telephonic identification of "Neal" as the person with a gun who hit T.Y. in the face. *See State v. Shank*, 2013-Ohio-5368, ¶ 29 (9th Dist.). While this Court is not required to accept the jury's credibility determinations, Mr. Jackson has not shown that this an exceptional case where the evidence weighs heavily against Mr. Jackson's convictions for felonious assault, having weapons under disability, and improper handling of a firearm in a motor vehicle. Mr. Jackson's second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV.

**THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT THE PROSECUTION BEARS THE BURDEN OF PROVIDING (SIC) THE DEFENDANT'S IDENTITY AS THE PERPETRATOR BEYOND A REASONABLE DOUBT.**

**{¶40}** Mr. Jackson concedes that he did not object to the jury instructions before the jury retired to consider its verdict as required by Crim.R. 30(A), and as such, he has waived all but plain error for purposes of appeal. He argues that the trial court committed plain error by failing to provide adequate jury instructions regarding the prosecution's burden to prove his identity as the perpetrator beyond a reasonable doubt. The trial court's jury instructions for each charge stated in relevant part that "[b]efore you can find Mr. Jackson guilty . . . you must find, beyond a reasonable doubt, that on the 13th day of October 2023 . . . Mr. Jackson . . . ." Mr. Jackson maintains that where multiple potential perpetrators were present, the trial court should have given enhanced instructions directing the jury's attention to the prosecution's specific burden regarding identity.

**{¶41}** "Pursuant to Crim.R. 52(B), '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" *State v. Horne*, 2011-Ohio-1901, ¶ 24 (9th Dist.). The criminal plain error standard requires that Mr. Jackson establish the following:

> First, an error, *i.e.*, a deviation from a legal rule, must have occurred. Second, the error complained of must be plain, that is, it must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights. We have interpreted this [. . .] to mean that the trial court's error must have affected the outcome of the [case].

(Quotations and citations omitted.) *State v. Morgan*, 2017-Ohio-7565, ¶ 36.

**{¶42}** Mr. Jackson has not developed a plain error argument that addresses all three of the above requirements. First, Mr. Jackson has not cited to any legal authorities standing for the

proposition that the court, sua sponte, was required to issue a more specific jury instruction regarding the State's burden to prove his identity as the perpetrator of the charged offenses. Thus, Mr. Jackson has not shown that there was a "deviation from a legal rule." *Id.* Even if we were construe Mr. Jackson's argument as establishing such a deviation, he has not argued how the alleged error was an "obvious defect" that "affected the outcome of the [case]" as required to establish plain error. *Id.* He has made no argument that the alleged error affected his substantial rights or that he was prejudiced by it. *Id.* at ¶ 55 ("a showing of prejudice is required" in a plain-error review). This Court has repeatedly stated that where an appellant fails to develop a plain error argument, we will not develop one on his behalf. *State v. Samamra*, 2025-Ohio-126, ¶ 55 (9th Dist.) citing *State v. Piatt,* 2020-Ohio-1177, ¶ 25 (9th Dist.)

{¶43} Based on the foregoing, Mr. Jackson's fourth assignment of error is without merit and is overruled.

### III.

{¶44} Mr. Jackson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

KRISTOPHER IMMEL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.